UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE HAYES, on behalf of herself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A. doing business as WELLS FARGO HOME MORTGAGE, INC.,<br><br>　　　　　　　Defendant. | Civil No. 13cv1707 L (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DOC. 14]** |

　　　Pending before the Court is Defendant Wells Fargo Bank, N.A.'s ("WF") motion to dismiss motion or strike. (*MTD* [Doc. 14].) The motion is fully briefed. (*Opp'n* [Doc. 19]; *Reply* [Doc. 25].) The Court found this motion suitable for determination on the papers submitted and without oral argument under Civil Local Rule 7.1(d)(1). (*Order re: Oral Argument* [Doc. 29].) For the following reasons, WF's motion is **GRANTED WITH PREJUDICE**.

//

//

//

13cv1707

## I. BACKGROUND

According to the First Amended Complaint, "Plaintiff [Michelle Hayes] purchased her home in 2001 and took out a mortgage with Wells Fargo[1]." (*FAC* ¶ 18.) In December 2010, Hayes called WF and expressed interest in a loan modification. (*Id.* ¶ 19.) WF told Hayes that "in order to be considered for a modification, she was required to set up an escrow account for her mortgage." (*Id.* ¶ 20.) Hayes complied and created an escrow account. (*Id.* ¶ 21.)

WF began sending "monthly statements requesting payment that included an escrow amount to be impounded of $0.01 or $0.02." (*FAC* ¶ 22.) On December 15, 2010, WF began making disbursements from the escrow account for county taxes and hazard insurance. (*Id.* ¶ 23.) On January 17, 2011, WF began making deposits into Hayes's escrow account. (*Id.* ¶ 24.) Hayes continued to make her payments, including the $0.01 or $0.02 escrow amount through June 2012. (*Id.* ¶ 25.)

In April 2012, Hayes received an "Initial Escrow Account Disclosure Statement" which informed her that "she had a $21,241.10 shortage in her escrow account and that her monthly loan payment was increasing from $2,898.79 to $5, 284.88 as a result." (*FAC* ¶ 26-27.) In August 2012, Hayes received an "Annual Escrow Account Disclosure Statement" from WF, indicating that her account was still $21,241.10 deficient, but that "her monthly payments were being lowered to $3,868.01." (*Id.* ¶ 28.) Both the initial and annual statements reflected anticipated a $7,392.06 yearly disbursement amount for taxes, but neither statement reflected anticipated insurance disbursements, despite the fact that WF "made a hazard insurance disbursement in [sic] February 4, 2011 for $2, 135.81 and again on February 27, 2012 for $1,990.99." (*Id.* ¶ 29.) "From the time Plaintiff began making escrow payments in January 2011, through November 2012, Plaintiff accumulated a negative balance of $22,221." (*Id.* ¶ 30.) On January 11, 2013, WF sent Hayes a "Notice of Intent to Foreclose." (*Id.* ¶ 31.)

---

[1] According to the FAC, WF acquired Wachovia Mortgage in 2008, and began moving mortgages originated by Wachovia to WF. According to Hayes, "[a]s successor in interest to loans originated by Wachovia, Wells Fargo faces liability for any harm caused by Wachovia's conduct." (*FAC* 2 n. 1.) In light of this, Hayes has decided to refer to both Wachovia and WF as "Wells Fargo." For purposes of this order only, this Court adopts this naming convention.

On August 1, 2013, Hayes filed her First Amended Complaint, alleging violations of California's Unfair Competition Law ("UCL") and the Consumer Legal Remedies Act ("CLRA") on behalf of the following putative class:

> All consumers in the United States and its territories whose home mortgage loans are or were serviced by Wells Fargo and where Wells Fargo failed to conduct an initial escrow account analysis as defined in 24 C.F.R. §3500.17 prior to opening an escrow account (the "Class").

(*FAC* ¶ 32.)  The gravamen of Hayes's claims is that WF improperly and intentionally set up her escrow account so that she would incur a large negative escrow balance.  Hayes claims that WF's "failure to maintain the escrow accounts of Plaintiff and the Class in compliance with the Real Estate Settlement Procedures Act, 24 C.F.R. § 3500 *et seq*. ("RESPA") is unlawful and constitutes violations of the UCL."  (*Id.* ¶ 43.)  She also claims that WF violated and continues to violate the CLRA by "[r]epresenting that [sic] [escrow account has] . . . characteristics . . . [or] benefits . . . which they do not have . . ." and by "representing that [the modification] confers . . . rights . . . or obligations which it does not have or involve . . . " (*Id.* ¶ 53.)

On October 9, 2013, WF moved to dismiss this action, or alternatively, to strike portions of the First Amended Complaint.  (*MTD* 4-22.)  WF argues that both of Hayes's claims are preempted by the Home Owners' Loan Act ("HOLA").  (*Id.* 4-15.)  WF also maintains that Hayes lacks standing to bring a UCL claim because she "has not and cannot allege" that WF caused her economic injury.  (*Id.* 15-19.)  In addition, WF claims that Hayes's CLRA cause of action fails because that statute does not apply to "mortgage loans, or to any ancillary services provided in connection with mortgage loans such as escrow accounts."  (*Id.* 19-21.)  Alternatively, WF suggests that the Court should strike Hayes's "prayer for recovery of damages under the UCL" because the remedies afforded under the UCL are limited to injunctive relief and restitution.  (*Id.* 22.)

In her opposition, Hayes only argues against dismissal with respect to her UCL claim.  She indicates that she is "voluntarily dismissing Count II, which asserted a claim under the [CLRA]." (*Opp'n* 1 n. 2.)  In light of this, her CLRA claim is **DISMISSED WITH PREJUDICE.**

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sinai Med. Ctr. v. Natal League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, — , 129 S. Ct. 1937, 1949 (2009)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a

motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

In addition, a "district court may, but it is not required to incorporate documents by reference." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012). Courts may invoke this incorporation by reference doctrine only to consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *see also Fecht v. Price Co.*, 70 F.3d 1078, 1080 n. 1 (9th Cir.1995) (superseded by statutes on other grounds). Where a court invokes the incorporation by reference doctrine, the court "may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Davis*, 691 F.3d at 1160 (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

### III.   DISCUSSION

#### A.   Judicial Notice

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc.,* 896 F.2d at 1555 n.19. However, a court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). WF requests judicial notice for certain documents, which all appear to be matters of

public record or incorporated by reference into the FAC. (*RJN* [Doc. 14-2]; *Supp. RJN* [Doc. 28].) Hayes does not oppose. Accordingly, the Court **GRANTS** WF's requests.

### B.     HOLA Preemption

Hayes contends that HOLA preemption does not apply because WF is not a federal savings association, and thus not entitled to the protections of HOLA. (*Opp'n* 4-8.) WF argues that, because the loan originated with Wachovia Mortgage, which was a federal savings association, and WF is a successor-in-interest to Wachovia, HOLA preemption applies to the alleged misconduct of WF. (*Reply* 5.) The Court agrees with WF.

It should be noted that district courts do not agree on how to address this situation. Indeed, "there is a growing divide in the district courts' treatment of this issue." *Kenery v. Wells Fargo Bank*, N.A., 2014 WL 129262 (N.D. Cal. Jan.14, 2014). The first approach is that "HOLA preemption applies to the conduct of successors to federal savings associations in serving a loan that was originated by a federal savings association." *Metzger v. Wells Fargo Bank, N.A.*, 2014 WL 1689278, *3 (C.D. Cal. April 28, 2014). The second is that "HOLA preemption does not apply to claims brought against successors to federal savings associations, whether such claims arise out of the conduct of the successor entity or the conduct of the federal savings association." *Id.* The third is that "HOLA preemption applies after a loan has been transferred to a successor to a federal savings association, but only to those claims that arise from conduct of the federal savings association...HOLA preemption does not apply to claims that arise from the conduct of the successor in servicing and managing the loan." *Id.* at 2014 WL 1689278, *4.

In *Metzger*, plaintiffs obtained a loan from World Savings Bank, which changed its name to Wachovia Mortgage, and was then converted to a national bank and merged with WF. *Metzger*, 2014 WL 1689278, *1. Plaintiffs alleged that they submitted numerous loan modification packages, but defendants never contacted Plaintiffs to assess those requests. *Id.* Just like the instant case, defendants contended that as a successor-in-interest to a federal savings

association, HOLA preemption applies to their conduct in connection with the servicing and management of the loan. *Id*. at 2014 WL 1689278, *3. In a well reasoned opinion, the *Metzger* court evaluated the three aforementioned alternatives for HOLA prevention in this circumstance, and concluded that HOLA preemption applied in the case[2]. *Id.* at 2014 WL 1689278, *3-4. For the same reasons, the Court finds that HOLA preemption applies to the case at bar.

### C.     Preemption Analysis

As the principal regulator of federal savings associations, the Office of Thrift Supervision ("OTS") promulgated a preemption regulation in 12 C.F.R. § 560.2. The regulation reads, *inter alia*:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph © of this section....

12 C.F.R. § 560.2(a). § 560.2(b) provides a list of specific types of state laws that are preempted, one of which, § 650.2(b)(6)[3] is specifically applicable here. In addition to the mandate of § 560.2(a) and (b), OTS provides how to properly analyze whether a state law is preempted under the regulation:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph ©. For these purposes, paragraph © is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

---

[2] The *Metzger* court relied on the Office of Thrift Supervision's opinion letters, the rationale behind the HOLA preemption regulation, and the fact that plaintiffs agreed that the loan would be governed by HOLA to make this decision. These same factors apply here.

[3] "[T]he types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding: . . . (6) escrow accounts, impound accounts, and similar accounts..." 12 C.F. R. §560.2(b)(6).

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).  The Court now turns to whether Hayes's remaining UCL claim is preempted.

The first step in the preemption analysis is to determine whether UCL § 17200, as applied, is a type of state law contemplated in the list under paragraph (b) of 12 C.F.R. § 560.2. Hayes alleges that WF's "failure to maintain the escrow accounts of Plaintiff and the Class in compliance with the Real Estate Settlement Procedures Act, 24 C.F.R. § 3500 et seq. ("RESPA") is unlawful and constitutes violations of the UCL." (*FAC* ¶ 43.)  Specifically, according to Hayes, WF violated the UCL by "improperly computing the amounts that the consumers would pay into the account such that they would accumulate large negative balances, be charged late fees and penalties, and/or face foreclosure proceedings." (*Id.* ¶ 44.)  These claims fit within § 560.2(b)(6) because WF's alleged misconduct was made in connection with Hayes's escrow account.  Because the UCL § 17200 claim, as applied, is a type of state law listed in paragraph (b), the preemption analysis ends there.  Hayes's claims under UCL § 17200 are preempted.

Hayes argues that her UCL claim is based on RESPA claims, and those claims are not preempted by HOLA.  (*Opp'n* 12-13.)  WF argues that this argument was addressed and rejected in *Munoz v. Financial Freedom Senior Funding Corp.*, 567 F. Supp. 2d 1156, 1162-1165 (C.D. Cal. June 2, 2008).  The Court agrees, especially in light of Hayes's failure to substantively address why the *Munoz* court's conclusion that a UCL claim based on RESPA can still be preempted does not apply here.

Hayes also argues that "OTS never intended to preempt UCL claims premised on the basic norms that undergird commercial transactions." (*Opp'n* 9 (citing OTS Op. Letter, *Preemption of State Laws Applicable to Credit Card Transactions*, 1996 WL 767462, at *9 (Dec. 24, 1996)).  In support of this argument, she cites *Gibson v. World Savings and Loan Assoc.*, 103 Cal. App. 4th 1291, 1303-04 (2002), a California Supreme Court case which concluded that because "duties to comply with contracts and the laws governing them and to refrain from misrepresentation . . . are principles of general application. . . [t]hey are not

designed to regulate lending and do not have a disproportionate or otherwise substantial effect on lending," and thus do not preempt UCL claims. However, as explained by the *Munoz* court, in *Silvas*, the "Ninth Circuit drew no distinction between a law of general applicability and one specifically designed to regulate savings associations. Thus [*Gibson*], to the extent that [it] hold[s] a law of general applicability cannot be preempted by HOLA, [is] in conflict with [*Silvas*]." *Munoz*, 566 F. Supp. 2d at 1163. Therefore, Hayes's argument is contradicted by Ninth Circuit authority.

## IV.  CONCLUSION AND ORDER

In light of the foregoing, WF's motion to dismiss is **GRANTED**. Because Hayes's claims are preempted, this dismissal is made **WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: July 3, 2014

_____
M. James Lorenz
United States District Court Judge